UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60821-Civ-COHN
        (08-60208-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

DAVID REIGOSA,                    :

    Movant,                       :

v.                                :            REPORT OF
                                               MAGISTRATE JUDGE
UNITED STATES OF AMERICA,  :

    Respondent.                   :
_____

## I. Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his career offender sentence following a guilty plea entered in Case No. 08-60208-Cr-Cohn.

The Court has reviewed the motion (Cv-DE# 1), the government's response (Cv-DE# 7), the movant's reply (Cv-DE# 9), the Presentence Investigation Report (PSI) and Addendum thereto, and all pertinent portions of the underlying criminal file.

## II. Claims

When construing Reigosa's motion to vacate liberally, as this Court must with pro se movants,[1] it appears that Reigosa is essentially raising the following claims:

    1.    His sentence was improperly enhanced based upon a non-qualifying prior conviction in that he had not received an adult sentence for that conviction.

---

[1]Normally, pro se filings are subject to less stringent pleading requirements, Estelle v. Gamble, 429 U.S. 97, 106 (1976), and should be liberally construed with a measure of tolerance. See Haines v. Kerner, 404 U.S. 519 (1972), See also Gomez-Diaz v. United States, 433 F.3d 788, 791 (11th Cir. 2005).

2.    A conviction entered when he was a juvenile was erroneously used as a prior offense to qualify him as a career offender under federal law, because he had never received an adult sentence for that offense.

3.    The facts surrounding his juvenile arrest and conviction violated federal and constitutional law.

4.    He received ineffective assistance of trial counsel during the state criminal proceedings and the instant federal proceedings, because his lawyers failed to challenge the juvenile conviction on the basis that it was entered in violation of his right to remain silent, his right to a *Miranda*-warning,[2] and right of parental notification and counsel's failure to do so resulted in the subject enhanced sentence.

### III. Procedural History

The relevant procedural history of the underlying criminal case is as follows. Reigosa and codefendants Primitivo Reigosa, movant's father; Stanley Lamour; and Ronald Gomez were charged by Indictment returned on August 7, 2008, with conspiracy to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§841(a)(1), 846 and 841(b)(1)(A)(ii) (Count 1) and conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A)(ii) and 846 (Count 2). (Cr-DE# 24). Movant and codefendant Lamour were additionally charged with possession with intent to distribute heroin in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(A)(i) (Count 3). Id.

Pursuant to a negotiated written plea agreement entered into with the government, movant changed his earlier entered plea of not guilty to guilty to Count 1 of the indictment in exchange for the dismissal of the other two counts. See Plea Agreement entered on December 3, 2008, at ¶1. (Cr-DE# 83). By entering into the written plea agreement, movant acknowledged that sentence would be imposed after the court considered an advisory guideline sentence, relying

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

in part on the results of a Presentence Investigation Report ("PSI"). The movant further acknowledged that the Court could depart from the guideline range and that the Court had the discretion to impose any sentence up to the statutory maximum authorized by law for the offense. Id. at ¶2. The movant understood that he could not withdraw the plea as a result of the sentence imposed. Id. The movant also understood that the court must impose a minimum term of imprisonment of ten-years and may impose a sentence up to life imprisonment. Id. at ¶3.

The government agreed to recommend at sentencing that the Court reduce by two levels the sentencing guidelines level applicable to the movant's offense pursuant to Section 3E1.1(a) of the Sentencing Guidelines based upon movant's recognition and affirmative and timely acceptance of personal responsibility. Id. at ¶6. The government further agreed that, if at the time of sentencing the offense level is determined to be 16 or greater, it would request an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing guidelines. Id. Based upon the negotiated plea, the movant agreed to waive his right to a direct appeal pursuant to 18 U.S.C. §3742, including the right to appeal any sentence imposed, any restitution order, and the manner in which the sentence was determined, unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure from the guideline range the court established at sentencing. Id. at ¶10. On the same date that he had executed the plea agreement, the movant signed the Factual Proffer, indicating that if the case had proceeded to trial as to Count 1 of the Indictment, the government's evidence would have shown beyond a reasonable doubt, that, among other things, he knowingly and intentionally conspired with others to possess with intent to distribute one kilogram or more of heroin. See Factual Proffer. (Cr-DE# 86). On December 3, 2008, the Court conducted a careful and

3

meticulous plea colloquy pursuant to Fed.R.Crim.P. 11, during which Reigosa entered a plea of guilty to Count 1 of the Indictment and the Court accepted the change of plea. (Cr-DE# 83, 129).

Before sentencing, a PSI was prepared which determined that at least one kilogram but less than three kilograms of heroin was attributable to the movant. (PSI at ¶22). Accordingly, pursuant to U.S.S.G. §2D1.1(a)(3), the base offense level was set at 32. Id. The probation officer further determined that based upon U.S.S.G. §4B1.1(a), Reigosa classified as a career offender because he was at least 18 years of age at the time of the instant narcotics offense and he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. Id. at ¶28. Due to movant's status as a career offender, and the fact that the penalty for the subject offense was life, the adjusted base offense level was increased to a level 37 pursuant to U.S.S.G. §4B1.1(b). Id. The movant was entitled to a total three-level reduction pursuant to U.S.S.G. §3E1.1(a) and (b) for his acceptance of responsibility and assistance in the investigation, giving him a total offense level of 34. Id. at ¶31. Reigosa had a total of eleven criminal history points, although the criminal history points were of no consequence because as a career offender, the criminal history category is always set at a category VI pursuant to U.S.S.G. §4B1.1. See Addendum to PSI. See also PSI at ¶¶41-2. A total adjusted base offense level of 34 and a criminal history category of VI, resulted in a guideline imprisonment range of 262 to 327 months. Id. at ¶79. The statutory term of imprisonment for the offense was a minimum of 10 years with a maximum term of life pursuant to 18 U.S.C. §841(b)(1)(A) and a minimum term of supervised release of five years was required. Id. at ¶¶78-81.

Movant filed no objections to the PSI. Trial counsel did, however, file a sentencing memorandum, arguing that a sentence of

262 to 327 months was unreasonable under the particular circumstances of this case. Counsel requested the Court to grant a downward variance from the guidelines range and impose a sentence of not more than ten to twelve years' imprisonment. (Cr-DE# 97). In support of the sentencing request was a report of a comprehensive psychological evaluation prepared by Dr. Michael P. Brannon, a licensed psychologist. Id. On February 12, 2009, sentence proceedings took place. See Transcript of sentencing hearing. (Cr-DE# 127). During sentencing, trial counsel asked the Court to consider a sentence in the range of ten to twelve years, as stated in the sentencing memorandum. Id. at 5-9. Trial counsel asserted that the lower sentence was warranted based upon Reigosa's particular personal circumstances. Id. Specifically, counsel stated that Reigosa had an unusual and dysfunctional upbringing in that his father was a narcotics trafficker and Reigosa was abandoned at a very early age by both parents, forcing him to raise himself. Id. Counsel maintained that the dysfunctional family situation manifested itself in psychological problems and criminal behavior, as indicated by the report of Dr. Brannon. Id. Trial counsel argued that a lesser sentence would give Reigosa the opportunity to participate in his own children's lives and would motivate him to utilize prison programs to change his life for the better. Id. Trial counsel presented Reigosa's half-sister as a witness who reiterated that movant's criminal behavior was the result of movant's extremely difficult childhood (i.e., he had been abandoned by both parents as an infant) and his various mental health illnesses which made him vulnerable to improper influences, such as his father. Id. at 9-13.

Trial counsel further argued that the particular facts of the instant offense did not warrant such a lengthy sentence and that a lesser sentence would serve the requirements of 18 U.S.C. §3553 to punish Reigosa and protect the public from future crimes. Id. at 5-

9. After the government advised the Court that it would rely on the representations included in the PSI, the Court found that a sentence at the bottom of the advisory guideline range would serve the sentencing objectives of punishment and deterrence in this case. Id. at 15-16. Consequently, the Court imposed a term of imprisonment of 262 months, the low end of the guidelines, to be followed by a five-year term of supervised release. Id. at 16. See also Judgment. (Cr-DE# 118).

Movant prosecuted a direct appeal from his sentence. (Cr-DE# 114). He argued that he had not been sentenced in a manner consistent with United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). (Cr-DE# 138). See also United States v. Reigosa, No. 09-10985 (11th Cir. March 26, 2010). By order entered on March 26, 2010, the Eleventh Circuit Court of Appeals dismissed the appeal, finding that the movant had waived his right to appeal the reasonableness of his sentence under the appeal-waiver provision of his plea agreement where Reigosa did not attack the lawfulness of his plea. Id. Less than two months later, movant filed the instant timely pro se motion to vacate pursuant to 28 U.S.C. §2255. (Cr-DE 139; Cv-DE# 1).

## IV. Discussion

Reigosa argues in grounds one and two of his motion to vacate, further clarified in his reply to the government's response, that his career offender sentence is unlawful, because the Court improperly relied upon a non-qualifying sentence. He states that the earlier sentence imposed by the state court was entered when he was a juvenile, resulting in a juvenile and not an adult sentence. Specifically, movant asserts that his prior 1999 state conviction for attempted robbery with a firearm, Palm Beach County Circuit Court Case No. 99-395CF, was improperly used as one of the predicates for career offender designation under U.S.S.G. §4B1.1(a). He next claims in ground three that his juvenile arrest

6

and resultant conviction violated federal and constitutional law in that his right to remain silent, his right to a *Miranda*-warning, and right of parental notification were violated. Reigosa claims in related ground four that he received ineffective assistance of trial counsel, because his lawyer in the state court proceeding and lawyer in this federal proceeding failed to challenge the subject prior state court juvenile conviction as unconstitutional and the conviction has been improperly relied upon for the enhanced federal sentence.

The government correctly argues that the claims challenging the career offender sentence as an erroneous application of the sentencing guidelines are procedurally barred from postconviction review on the merits. A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Massaro v. United States, 538 U.S. 500 (2003). See also United States v. Frady, 456 U.S. 152 (1982); Lynn v. United States, 365 F.3d 1225, 1234-35 (11th Cir. 2004). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal  and actual prejudice resulting from the alleged error or (2) actual innocence. Lynn, 365 F.3d at 1234; Bousley v. United States, 523 U.S. 614, 623 (1998). See also Bousley, 523 U.S. at 622; Jones v. United States, 153 F.3d 1305 (11th Cir. 1998)(finding that cause and prejudice was not available to movant as a means of avoiding procedural default, but recognizing that actual innocence might still be a viable option); Campino v. United States, 968 F.2d 187, 189-90 (2nd Cir. 1992)("[A] procedural default of even a constitutional issue will bar review under Section 2255, unless the petitioner can meet the 'cause and prejudice' test").

7

The claims now raised by the movant with regard to the lawfulness of his sentence were not raised on direct appeal. Reigosa appears to argue in his motion that counsel was ineffective for failing to pursue the particular sentence challenge either at sentencing or on direct appeal. The claim of ineffective assistance of counsel may constitute cause for a procedural default. See generally Murray v. Carrier, 477 U.S. 478 (1986). "[An] ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). See also United States v. Breckenridge, 93 F.3d 132, 134 n.1 (4th Cir. 1996). However, the Eleventh Circuit has held that "[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005); see also, Leach v. United States, 171 Fed.Appx. 765 (11th Cir. 2006); Johnson v. United States, 2007 WL 4615236 *5-6 (S.D. Fla. 2007). As concluded correctly by the *Williams* court, to hold otherwise would permit the movant "to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Williams v. United States, supra. A waiver is knowing and voluntary if 1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or 2) the record demonstrates that the defendant understood the full significance of the waiver. Id.

Here, review of the transcript of the change of plea

proceeding reveals that Reigosa acknowledged while under oath that he had read and discussed with counsel the terms and conditions of the written plea agreement before he executed the agreement and that he had understood all terms and conditions.[3] See Transcript of change of plea proceedings at 7-8. (Cr-DE# 129). The movant further acknowledged that he was satisfied with counsel's representation and advice. Id. at 4. The movant also stated that he understood that, as part of the plea agreement, he was giving up his right to appeal the sentence. Id. at 8-9. The Court thoroughly and fully questioned Reigosa about the appeal waiver during which Reigosa advised the Court that he was voluntarily and knowingly waiving his right to take an appeal from any sentence imposed unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure and/or a variance from the guideline range. Id. at 8-9. When asked by the Court whether he had fully discussed the appellate waiver with counsel and whether he had any questions regarding the legal effect of the appellate waiver, Reigosa answered in the affirmative to the former question and in the negative to the latter. Id. at 9, 10.

With regard to sentence, after the movant informed the Court that he had discussed with counsel how the federal sentencing guidelines might apply in his case, the Court went on to advise Reigosa that the Court was required to compute an advisory sentence under the federal sentencing guidelines and that the advisory

---

[3]It is noted that Reigosa's representations during the plea proceeding, as well as those of his lawyer and the findings by this Court when accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Solemn declarations in open court carry a strong presumption of truthfulness, and a defendant bears a heavy burden to show that the plea was involuntary after testifying to its voluntariness in open court. DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994). See also United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005)("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any §2255 motion that necessarily relies on allegations that contradict the sworn statements.").

sentence would be determined by the Court relying in part on a presentence investigation conducted by the United States Probation Office. Id. at 6. Reigosa indicated that he understood. Id. Reigosa was also told that he could be sentenced within the guideline range or not, depending upon the circumstances, and that the Court had the authority to impose any sentence up to the statutory maximum. Id. at 6-7. Reigosa again indicated that he understood the sentence implications of his guilty plea. Id. The movant denied being promised anything other than that which was contained in the plea agreement and further denied being coerced or threatened into changing his plea. Id. at 8.

The appellate waiver in this case was clearly knowing and voluntary, as recognized by the Eleventh Circuit on direct appeal. See United States v. Reigosa, No. 09-10985 (11th Cir. March 26, 2010). There is nothing of record to suggest that the movant did not understand the significance of the waiver of appeal. The record reveals that the waiver did not result in an unlawful denial of his right to appeal, but was rather a part of a lawful, enforceable agreement between the movant and the government. Under the circumstances presented here, the movant is not only precluded from challenging the manner in which sentence was imposed, but is also precluded from challenging his sentence in the guise of an ineffective assistance of counsel claim. Williams, supra. Consequently, grounds one and two, and any related ineffective assistance of trial counsel claim Reigosa may be raising where he faults counsel for failing to pursue the claims now raised as grounds one and two at sentencing or on direct appeal, are covered by the appeal waiver and therefore not subject to collateral attack in this proceeding.

Moreover, Reigosa's claim that his sentence was imposed in violation of the sentencing guidelines is not reviewable on the

merits on an alternate basis. Sentencing errors are generally not cognizable in a collateral attack unless the error complained of resulted in a complete miscarriage of justice. See e.g., Burke v. United States, 152 F.3d 1329 (11th Cir. 1998)(holding that nonconstitutional claims, such as the claim that a sentence was contrary to a subsequently enacted clarifying sentencing guidelines amendment, can be raised on collateral review of a conviction only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994)(stating that, "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under §2255."). See also 28 U.S.C. §2255(a). Since Reigosa was afforded due process at the sentencing hearing and has not demonstrated a constitutional violation or an error which resulted in a "complete miscarriage of justice," his challenge to his career offender sentence is not cognizable in this proceeding.

Even if Reigosa were entitled to review on the merits of his sentence attack raised here as grounds one and two, he would not be entitled to postconviction relief because his attack is meritless. It is true that Reigosa was fifteen-years old when he committed the challenged prior state court offense, however, he was convicted upon a negotiated plea of guilty as an adult in the felony division of the Palm Beach County Circuit Court. See Negotiated Settlement entered in Palm Beach County Circuit Court Case No. 99-395CF on June 8, 1999; Sentence entered in Palm Beach County Circuit Court Case No. 99-395CF; Arrest Notice to Appear and Probable Cause Affidavit executed on January 11, 1999. (Cv-DE# 1-1). He was sentenced to a total term of imprisonment of twenty-nine months for committing the offenses of attempted robbery and aggravated assault. Id. Review of records maintained by the Clerk of Court,

11

Fifteenth Judicial Circuit, Palm Beach County, Florida, <u>State v. Reigosa</u>, Case No. 99-395-CF (Fla. 15th Jud.Cir.Ct.) reveal that the criminal case was assigned to the felony division of the court as indicated by the designation "CF". <u>See</u> http://www.mypalmbeachclerk.com/criminalcourt.aspx.[4]   Further, records maintained by the Florida Department of Corrections reviewed this date indicate that Reigosa was transferred to the custody of the Florida Department of Corrections on June 17, 1999, and remained confined there until January 26, 2001, when he completed the service of his sentence. <u>See</u> http://www.dc.state.fl.us.[5] While Reigosa may have been sentenced pursuant to Florida's youthful offender provisions, <u>see</u> <u>Fla.Stat.</u> §958.04 (Judicial disposition of youthful offenders), as apparently indicated on the face of the written plea settlement, such sentencing does not constitute a juvenile disposition. Youthful offender sentencing merely permits the possibility of a more favorable sentence for those who qualify as a youthful offender than if not a youthful offender and also permits early release if certain conditions are met. Reigosa is mistaken that he received a juvenile sanction. <u>See</u> <u>State v. Drury</u>  829 So.2d 287, 289 (Fla. 1st DCA 2002)(recognizing that a youthful offender sentence is an adult sanction), *citing*, <u>State v. Richardson</u>, 766 So.2d 1111, 1113 n.1 (Fla. 3d DCA 2000)(stating that "[a] youthful offender sentence is an adult sanction ..., not a juvenile sanction ....").

Movant's prior conviction and sentence entered in Case No. 99-395CF were therefore properly counted toward his criminal

---

[4]The Court takes judicial notice of information available at the database maintained by the Clerk of Court, Fifteenth Judicial Circuit, Palm Beach County, Florida. <u>See</u> <u>Fed.R.Evid.</u> 201.

[5]The Court takes judicial notice of information available at the database maintained by the Florida Department of Corrections. <u>See</u> <u>Fed.R.Evid.</u> 201.

history calculations and as a predicate prior conviction under the career offender provisions of the Sentencing Guidelines. Pursuant to U.S.S.G. §4A1.2(d), offenses committed prior to age eighteen are counted toward calculating a defendant's criminal history "[i]f the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month." As indicated herein, movant was convicted as an adult and received a sentence of twenty-nine months' imprisonment, thus satisfying the requirements for counting a conviction for an offense committed prior to age eighteen. Additionally, movant's prior conviction is included in his criminal history since the sentence was imposed within fifteen years of the commencement of the instant offense. See U.S.S.G. §4A1.2(e)(1)("Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted"). Movant's prior sentence was imposed on June 8, 1999, and he was charged with committing the instant offense in July, 2008, well within the fifteen-year limit. Accordingly, the prior conviction in Case No. 99-395CF was properly counted toward his criminal history calculation. Further, pursuant to U.S.S.G. §4B1.1(a), "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Contrary to Movant's assertion, all prerequisites for career offender sentencing have been met.

Moreover, as noted by the government, review of the record indicates that trial counsel carefully reviewed and investigated the relevant sentencing factors before sentencing. He had a comprehensive psychological evaluation of Reigosa performed by a

licensed psychologist before the sentence proceeding and he filed
a sentencing memorandum with the psychologist's report as a
supporting documentary exhibit. During sentencing, trial counsel
also attempted to persuade the Court to vary from the guideline
range, which included presenting testimony from Reigosa's half-
sister. Due to no fault of trial counsel, this Court was not
persuaded to vary from the guidelines range. The court properly
considered the 18 U.S.C. §3553(a) factors, accurately calculated
the advisory guideline range, and imposed a sentence at the low end
of the guideline range.

Under the circumstances present here, no showing has been made
that any further or different argument by trial counsel would have
altered the outcome of the sentence. Reigosa has failed to
demonstrate that his sentence was in any way increased by the
deficient performance of his attorney. Thus, Movant cannot show
that he was prejudiced by counsel's action or, more appropriately
inaction, during sentencing. See Strickland v. Washington, 466 U.S.
668 (1984).[6] See also Glover v. United States, 531 U.S. 198
(2001)(holding "that if an increased prison term did flow from an
error [of counsel] the petitioner has established Strickland
prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir.
1993)(holding that the *Strickland* test also applies to claims
involving ineffective assistance of counsel during the punishment
phase of a non-capital case). Counsel's performance was in no way
ineffective with regard to sentencing.

Reigosa argues in claim three that his state court conviction
was unlawful, because it was based upon incriminating statements
made to the police where his parents and/or counsel were not

---

[6]To prevail on a claim of ineffective assistance, a movant must demonstrate
both that his attorney's efforts fell below constitutional standards, and that
he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984).

present before *Miranda*-warnings were administered and/or were not present during interrogation. He argues in claim four that state trial counsel rendered ineffective assistance when he failed to challenge the state court conviction on this basis. These claims are not cognizable in this §2255 proceeding, because they challenge the validity of Reigosa's prior state conviction (which was used to enhance his sentence as a career offender), rather than the federal conviction itself. It is well settled that collateral attacks on prior convictions are generally prohibited in federal sentencing proceedings and may be raised only when the conviction was obtained in violation of the defendant's right to counsel. United States v. Phillips, 120 F.3d 227, 231 (11th Cir. 1997), *citing*, Custis v. United States, 511 U.S. 485 (1994)(holding that only prior convictions which may be collaterally attacked at sentencing were those obtained in violation of the right to appointed counsel);[7] United States v. Farris, 77 F.3d 391, 397 & n. 10 (11th Cir.), cert. denied, 519 U.S. 896 (1996); McCarthy v. United States, 320 F.3d 1230, 1232 (11th Cir. 2003). The Supreme Court has also held that a federal prisoner who has failed to pursue available remedies to challenge a prior conviction (or has done so unsuccessfully) may not collaterally attack that conviction through a motion pursuant to 28 U.S.C. §2255 directed at the enhanced federal sentence. Daniels v. United States, 523 U.S. 374 (2001), *citing*, Custis v. United States, 511 U.S. at 493; Johnson v. United States, 340 F.3d 1219 (11th Cir. 2003)(accord).

The record before this Court indicates that Reigosa was represented by counsel during the state court criminal proceeding. See Negotiated Settlement entered in Palm Beach County Circuit Court Case No. 99-395CF on June 8, 1999. (Cv-DE# 1-1). Also, the

---

[7]Although *Custis* involved a sentence enhancement under the Armed Career Criminal Act, the Eleventh Circuit has held that *Custis* is also applicable to sentence enhancements under the career offender provisions of U.S.S.G. §4B1.1. See United States v. Phillips, 120 F.3d 227, 231 (11th Cir. 1997).

on-line docket of the Palm Beach County Circuit Court indicates that Reigosa has never pursued available state court postconviction remedies to challenge his conviction on this basis or any other ground. <u>See</u> http://www.mypalmbeachclerk.com/criminalcourt.aspx.

It also cannot be overlooked that Reigosa's earlier state court conviction was entered pursuant to a negotiated plea of guilty. A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant. <u>United States v. Broce</u>, 488 U.S. 563 (1989). <u>See also</u> <u>Barrientos v. United States</u>, 668 F.2d 838, 842 (5th Cir. 1982). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

<u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). Exceptions to the general rule are those cases which are constitutionally infirm because the government has no power to prosecute them at all, which is not applicable to this case. <u>See</u> <u>Broce</u>, 488 U.S. at 574-575.

More specifically, a voluntary and intelligent guilty plea constitutes a waiver of a claim of an involuntary confession under the Due Process Clause or *Miranda*. <u>See</u> <u>McMann v. Richardson</u>, 397 U.S. 759, 772 (1970)(holding that a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney); <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150-51 (11th Cir. 1991)(stating that the Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea); <u>Franklin v. United States</u>, 589 F.2d 192, 194-95 (5th

16

Cir. 1979)(holding that guilty plea waives claims regarding *Miranda* warnings, coerced confessions, perjury, and illegal searches and seizures in a section 2255 proceeding). See also Tiemens v. United States, 724 F.2d 928, 929 (11th Cir.)(stating that "a guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process"), cert. denied, 469 U.S. 837 (1984). The waiver also extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. See Bradbury v. Wainwright, 658 F.2d 1083, 1087 (5th Cir. 1981), cert. denied, 456 U.S. 992 (1982). See also United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992)(per curiam)(holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea).

Reigosa's claim that his confession was unlawfully obtained in violation of his *Miranda* protections and/or due process protections due to his status as a minor and his claim that he received ineffective assistance of state trial counsel with regard to his confession do not relate to the voluntariness of the plea. Reigosa does not challenge the voluntariness of the plea in this federal proceeding and the plea was entered with the aid of counsel, as indicated herein. Accordingly, by entering the guilty plea, Reigosa affirmatively waived his right to pursue any and all challenges to his confession.[8] Consequently, there appears to be no legal basis

---

[8]It is noted that when a juvenile defendant is under investigation, the Supreme Court has consistently recognized that the coerciveness of the custodial setting is of heightened concern. See e.g., Haley v. Ohio, 332 U.S. 596, 599 (1948)(the Court reasoned that because a fifteen and one-half-year-old minor was particularly susceptible to overbearing interrogation tactics, the voluntariness of his confession could not "be judged by the more exacting standards of maturity"). See also Gallegos v. Colorado, 370 U.S. 49, 54 (1962)(Court observed that a 14-year-old suspect could not be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions and, therefore, required the aid of more mature judgment from a lawyer or adult relative or friend). However, neither the United States Supreme Court nor the courts of Florida have adopted a bright-line rule that would render a confession by a juvenile involuntary. See Gallegos v. Colorado, 370 U.S. at 52-55; State v.

17

to challenge the validity of the underlying state conviction in the state courts, at the time of the movant's sentencing in federal court, nor at this time. Trial counsel, therefore, did not render constitutionally ineffective assistance when he failed to raise the now-presented non-meritorious challenges to the career offender sentence or prior state court conviction. See Strickland, supra. See also Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1420-22 (2009)(stating that Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success). Under these circumstances, the movant is entitled to no relief on claims three and four in that pursuant to applicable caselaw, the prior conviction cannot be challenged in this §2255 proceeding.

## V. Evidentiary Hearing

The movant's request for an evidentiary hearing on any or all of his claims should be denied. The movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. See Townsend v. Sain, 372

---

Francois, 197 So.2d 492, 493-95 (Fla. 1967). In Florida, when a juvenile defendant is involved the police are obligated to attempt to notify the parents or the legal guardian  upon taking the defendant into custody.  See Fla.Stat §985.207(2) (West Supp. 1997). The state courts have concluded, however, that the failure to notify a juvenile's parents before the juvenile is interrogated does not render the confession inadmissible *per se*. Doerr v. State, 383 So.2d 905 (Fla. 1980). Rather, such failure is but one factor to be considered in determining whether the confession was voluntary. Id. at 907, quoting Doerr v. State, 348 So.2d 938, 941 (Fla. 2nd DCA 1977)("'The fact that a juvenile's confession was given before he had the opportunity to talk with his parents or an attorney is certainly a factor militating against its admissibility.'"). See also State v. S.L.W., 465 So.2d 1231 (Fla. 1985)(under Fare v. Michael C., 442 U.S. 707 (1979), totality of circumstances includes evaluation of juvenile's age, experience, education, background, and intelligence, and of whether juvenile has capacity to understand warnings given, nature of Fifth Amendment rights, and consequences of waiving those rights). The Florida courts have found this analysis equally applicable when determining the knowing, intelligent and voluntary nature of a Miranda waiver. See Ramirez v. State, 739 So.2d 568, 577 (Fla. 1999). Thus, the fact that Reigosa's parent or legal guardian may not have been notified as provided by Florida statute does not render any confession *per se* involuntary, as Reigosa apparently believes.

U.S. 293, 307 (1963). A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. <u>See</u> <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), <u>citing</u>, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979). For the reasons stated above, the claims raised are procedurally barred, not cognizable, unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## VI. <u>Conclusion</u>

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 4TH day of January, 2011.

UNITED STATES MAGISTRATE JUDGE

cc:   David Reigosa, <u>Pro</u> <u>Se</u>
      Reg. No. 77771-004
      FCI Beckley
      Federal Correctional Institution
      P.O. BOX 350
      Beaver, WV  25813

      Terry L. Lindsey, AUSA
      U.S. Attorney's Office
      500 East Broward Boulevard, 7th Floor
      Fort Lauderdale, FL 33394